J. S69017/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.C., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| APPEAL OF J.C., Jr., FATHER, : | |
| : | No. 2067 EDA 2015 |
| Appellant : | |

Appeal from the Decree Entered June 11, 2015,
in the Court of Common Pleas of Wayne County
Civil Division at No. 11 AD 2015

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND OLSON, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 26, 2016**

J.C., Jr. ("Father"), appeals from the decree dated and entered on June 11, 2015, in the Wayne County Court of Common Pleas, Civil Division, involuntarily terminating his parental rights to his minor daughter, D.C. ("Child"), born in October of 2014, pursuant to Section 2511(a)(2), (5), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), and (b).[1]  We affirm.

The relevant facts and procedural history of this case are as follows. In October 2014, Child was born with fetal alcohol syndrome.  (Trial court opinion, 7/31/15 at 2.)  On October 9, 2014, Wayne County Children & Youth Services ("CYS") petitioned for and obtained emergency protective custody of Child due to parents' drug use and intellectual limitations.  (***Id.***)

---

[1] The trial court's decree also involuntarily terminated D.L.C.'s ("Mother's") parental rights to Child.  Mother has not filed an appeal from the trial court's decree, nor is she a party to this appeal.

That same day, CYS placed Child in foster care. At this time, Father was receiving financial support from and living with his 83-year-old father ("Paternal Grandfather") at Paternal Grandfather's residence, which a CYS caseworker described as unclean and in disarray. (*Id.*) Father's only source of income was from collecting scrap metal and Social Security Disability Insurance. (*Id.*)

Prior to Child's birth, Father had been in and out of rehabilitation facilities for substance abuse issues on four separate occasions. (*Id.*) On October 22, 2014, Father entered a rehabilitation facility for the fifth time only to sign himself out on October 30, 2014, a mere eight days later. (*Id.*) On October 27, 2014, a permanency plan was developed with the overarching objective that Father maintain his sobriety. On November 4, 2014, a permanency review hearing took place, at the conclusion of which the trial court adjudicated Child dependent and ordered that temporary legal and physical custody of Child remain with CYS. The trial court instituted a visitation schedule permitting Father supervised visits with Child each week, from Monday through Friday, for five hours per day. The trial court also ordered Father to undergo a parental fitness evaluation to be conducted by a licensed psychologist. On November 13, 2014, Father entered a rehabilitation facility for the sixth time only to sign himself out once again on or about December 7, 2014. *Id.*

On December 22, 2014, and December 29, 2014, Father refused to submit to random drug screens, as required under the permanency plan. (Notes of testimony, 6/10/15 at 9.) On January 9, 2015, Father tested positive for synthetic cannabinoids and, on January 15, 2015, tested positive for methamphetamines. (*Id.*) On January 26, 2015, Father became incarcerated for possessing hypodermic needles in violation of the terms of his parole stemming from an earlier theft conviction. His prospective release date is March 25, 2016. (*Id.* at 17.) On February 24, 2015, the trial court changed Child's permanency goal from return to parent to adoption.

On April 29, 2015, CYS filed a petition to involuntarily terminate Mother and Father's parental rights to Child, alleging the elements of Section 2511(a)(2), (5), and (b) of the Adoption Act. On June 10, 2015, the trial court held a termination hearing. Mother did not appear for the hearing but was represented by counsel, and Father participated in the hearing via telephone conference. At the hearing, CYS caseworker, Bernadette Musgrove, testified as to Father's failure to maintain his sobriety throughout the duration of Child's placement. (*Id.* at 9.) Ms. Musgrove testified further that up until his incarceration, "[Father] didn't complete any full visit[s] [with Child] . . . and that he typically left about halfway through each visit if not sooner. (*Id.* at 10.) Judith Munoz, the psychologist who conducted Father's parental fitness evaluation, also testified at the hearing. Ms. Munoz testified, in part, as follows:

> [Father's] intellectual deficits. . . .[,] [h]is second grade reading level, his extensive history of substance abuse with noncompliance and treatment, unstable relationships, significant physical health concerns, poor social judgment and financial irresponsibility result in the need for supervis[ion] and assistance in daily living in order to live in the community and interfere with his ability to care for a child. I felt that he remained at a high risk for relapse for drug and alcohol abuse because he has very poor coping skills[,] and he admitted that he loves his opiates. Behaviorally[,] he was unable to sustain interest in visiting with [Child] in spite of not working and having access to transportation. . . . He's unable to care for a child independently and[,] behaviorally[,] was unable to demonstrate care, concern or bonding with [Child].

*Id.* at 32-33. Ms. Munoz testified further that she does not believe Father has a bond with Child and would be supportive of Child's adoption. (*Id.*)

On June 11, 2015, the trial court issued the underlying decree, involuntarily terminating Father's parental rights to Child pursuant to Section 2511(a)(2), (5), and (b) of the Adoption Act. On July 9, 2015, Father filed a timely notice of appeal but failed to simultaneously file a concise statement of errors complained of on appeal, in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b). As a result, on July 23, 2015, the trial court issued an order directing Father to file a concise statement of errors

complained of on appeal no later than July 30, 2015. Thereafter, on July 28,

2015, Father filed a concise statement of errors complained of on appeal.[2]

On appeal, Father raises three issues for our review:

1. Whether the [trial court] erred in finding to terminate the parental right[s] of [Father] pursuant to [23 Pa.C.S. § 2511(a)(2)]?

2. Whether the [trial court] erred in finding to terminate the parental right[s] of [Father] pursuant to [23 Pa.C.S. § 2511(a)(5)]?

3. Whether the [trial court] erred in finding to terminate the parental right[s] of [Father] pursuant to [23 Pa.C.S. § 2511(b)]?

Father's brief at 4.

We review appeals from the involuntary termination of parental rights

according to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are

---

[2] Although Father failed to comply with Pa.R.A.P. 1925(a)(2)(i) and (b), relating to children's fast track appeals, we decline to dismiss or quash his appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super. 2009) (holding that the failure to file a concise statement of errors complained of on appeal **with** the notice of appeal will result in a defective notice of appeal, to be disposed of on a case-by-case basis). Here, Father filed his Rule 1925(b) statement 19 days after filing the notice of appeal. However, since the misstep was not prejudicial to any of the parties and did not impede the trial court's ability to issue a thorough opinion, the procedural error was harmless. *Cf. J.P. v. S.P.*, 991 A.2d 904 (Pa.Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010)]. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2511, which requires a bifurcated analysis:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007), citing 23 Pa.C.S.A. § 2511.

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.*, quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003).

Here, the trial court terminated Father's parental rights pursuant to Section 2511(a)(2), (5), and (b), which provide as follows:

## § 2511. Grounds for involuntary termination

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), and (b). We need only find sufficient grounds under any one subsection of Section 2511(a) in order to affirm the trial court's decision to terminate parental rights. *In re T.M.T.*, 64 A.3d 1119 (Pa.Super. 2013).

In his brief on appeal, Father argues that CYS presented insufficient evidence to sustain its burden under Section 2511(a) and (b), and thus, that the trial court abused its discretion in involuntarily terminating his parental rights to Child. Specifically, Father contends that the evidence adduced fails to establish that he is incapable of or refuses to remedy the conditions which led to Child's placement -- namely, his drug use and intellectual deficiencies. Father avers that he is actively seeking treatment and counseling for his substance abuse issues while incarcerated and asserts that this renewed commitment to sobriety in conjunction with services and assistance on the

part of CYS will make it possible for him to raise Child in spite of his intellectual deficiencies. (Father's brief at 11-12.) We disagree.

To satisfy the requirements of Section 2511(a)(5), the moving party must produce clear and convincing evidence regarding the following elements: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1273-74 (Pa.Super. 2003).

In its Rule 1925(a) opinion, the trial court explained its analysis under Section 2511(a)(5) as follows:

> [Child] has been removed from the care of her parents for a period of a[t] least six months. . . . [Child] was involuntarily removed from her Mother and Father because of their drug use and intellectual disabilities. These conditions continue to exist because[,] based on testimony, Father has been unable to maintain sobriety and has a high risk of relapse. . . . Father cannot or will not remedy his addiction within a reasonable period of time. Presently, Father is incarcerated and has been since January 26, 2015. His release date is scheduled for March 25, 2016. Father's goal, once he is released, is to check himself into a six to nine month rehab facility. By the time Father completes his seventh

attempt at rehabilitation, [Child] will be two (2) years old. This of course would be Father's best case scenario. Father has already gone to rehab six (6) times, all of which have been unsuccessful. [The trial court] took into consideration the chances of another unsuccessful attempt at rehabilitation because the psychologist in this case explained how Father has a high risk of relapse. Taking everything into consideration, the chances of [Child] remaining in foster care even longer than Father's expected goal [are] high.

The services or assistance reasonably available to Father are not likely to remedy the conditions which led to the removal of [Child] within a reasonable period of time. According to a case-worker, Father has not cooperated with any of the services made available to him. Specifically, in regards to his addiction, Father has refused to take requested drug screens and failed to follow-up with intensive outpatient rehab. . . . The termination of Father's parental rights would best serve the needs and welfare of [Child]. Based on the psychologist's observations during her December 2014 and January 2015 evaluations, Father is unable to care for [Child] independently and has been unable to demonstrate care, concern or bonding with [Child]. For instance, the psychologist noted that: (a) Father has a second grade reading level; (b) Father has an extensive history of substance abuse and has failed to comply with treatment; (c) Father has unstable relationships; (d) Father has hepatitis C but does not follow through with any of the medical treatment[;] (e) Father is financially irresponsible, which results in his need for assistance in daily living; (f) Father has a high risk of relapse for drug and alcohol abuse because he has demonstrated poor coping skills and admitted to the fact that he likes his opiates; and (g) Father has been unable to sustain an interest in visiting with [Child] despite not working and having access to transportation.

Therefore, [CYS] has produced clear and convincing evidence that the parental rights of

> Father should be terminated under
> [Section 2511(a)(5)].

Trial court opinion, 7/31/15 at 3-5.

After a careful review of the record, the trial court's opinion, the briefs on appeal, and the relevant law, we conclude that the trial court's findings are supported by clear and convincing, competent, and sufficient evidence, and that it reasonably concluded that the elements of Section 2511(a)(5) were met by the facts before it. We discern no abuse of discretion or error of law on this issue.

Having determined that the requirements of Section 2511(a) are satisfied, we proceed to review whether the trial court properly found that termination of Father's parental rights was in the best interest of Child under Section 2511(b). With respect to Section 2511(b), this court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d [753, 762-63 (Pa.Super. 2008)]. Accordingly, the extent of the bond-effect

> analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

In its Rule 1925(a) opinion, the trial court explained its analysis under Section 2511(b) as follows:

> Based upon the evidence and testimony presented, [the trial court] found that it was in the best interest of [Child] to terminate the parental rights of Father. Father testified that he has failed to care for [Child] because of his addiction and incarceration. Father's addiction and current incarceration does not excuse his failure to perform parental duties. Since [Child] was born, Father was offered the opportunity to visit with [Child] Monday through Friday for five (5) hours at a time. This provided Father with ample opportunities to form a bond with [Child], however, he chose either to leave early or not show up at all. Terminating Father's parental rights would have no effect on [Child] because the bond between Father and [Child] is nonexistent. [Child] has found stability and security with a foster family. [Child] d[e]serves to remain in a stable and secure environment.

Trial court opinion, 7/31/15 at 6.

Here, our review of the record indicates that there is clear and convincing, competent, and sufficient evidence to support the trial court's decision that termination of Father's parental rights best serves Child's developmental, physical, and emotional needs and welfare. Although Father has expressed a willingness to fulfill his parental duties regarding Child's needs and welfare, his overall lack of progress towards alleviating the circumstances which necessitated Child's placement in the first place is

illustrative of his inability to do so. As such, we find that it was appropriate for the trial court to determine that the termination of Father's parental rights would not have a detrimental effect on Child and would be in Child's best interest. In consideration of these circumstances and our careful review of the record, we conclude that the trial court did not abuse its discretion or commit an error of law in finding competent evidence to support the termination of Father's parental rights to Child under Section 2511(b).

Accordingly, for the reasons stated above, we affirm the trial court's decree involuntarily terminating Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(5) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2016

- 14 -